**Ollie M. TAFT, Petitioner, Cross-Respondent,**

v.

**ALABAMA BY–PRODUCTS CORPORATION, Respondent, Cross-Petitioner,**

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent.**

**No. 83–7374.**

United States Court of Appeals, Eleventh Circuit.

June 8, 1984.

Cooper, Mitch & Crawford, Frederick T. Kuykendall, III, Birmingham, Ala., for petitioner, cross-respondent.

Barbara J. Johnson, Workers' Compensation Programs, Dept. of Labor, Bonnie J. Brownell, William C. Jacobs, J. Michael O'Neill, Dept. of Labor, Washington, D.C., for respondent.

H. Thomas Wells, Jr., A. Inge Selden, III, Birmingham, Ala., for Alabama By-Products Corp.

Before KRAVITCH and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Ollie M. Taft, a former employee of Alabama By-Products Corporation ("ABC"), petitions for review of the Benefits Review Board's (the "Board") decision denying him benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended[1] (the "Act"), 30 U.S.C. § 901 *et seq.* We affirm the denial of benefits.[2]

---

1. Title IV of the Act has been amended three times since 1969: first by the Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150; then by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95; and most recently by the Black Lung Benefits Amendments of 1981, Pub.L. No. 97–119, 95 Stat. 1635. Prior to the 1972 amendments, a large number of claims were denied under the standards of the Social Security Administration ("SSA"). The 1972 amendments, which were implemented as interim presumptions at 20 C.F.R. § 410.490, were passed to liberalize eligibility requirements. The 1972 amendments also shifted responsibility for Part C claims (claims filed after December 31, 1973) to the Department of Labor ("DOL"). The DOL's claims approval rate, however, was significantly lower than that of the

SSA because the SSA's liberal interim presumption was inapplicable to DOL cases. Congress responded with the Black Lung Benefits Reform Act of 1977, which was enacted to expand coverage and to liberalize claim awards. The Secretary of Labor was authorized to adopt new criteria which were to be no more restrictive than the SSA's interim presumption. The Secretary promulgated interim criteria at 20 C.F.R. § 727.200 *et seq.* including the presumption at issue in this case, at § 727.203. In addition, financial responsibility for Part C claims passed from the federal government, which pays Part B claims, to the employer or its insurance carrier, unless an appointed state workers' compensa-

2. See note 2 on page 1520.

## I. BACKGROUND

Taft worked in and around coal mines for approximately thirty-six years until his retirement in 1976, at age sixty-two. On February 19, 1976, at which time he was still employed by ABC as a miner, Taft filed a claim for benefits under the Act for alleged total disability due to pneumoconiosis. Pneumoconiosis, which is commonly known as "black lung," is a dust disease of the lungs arising from coal mine employment. The Department of Labor approved the claim, holding the coal miner operator, ABC, liable. ABC contested its potential liability and a formal hearing was held on August 8, 1980 before an Administrative Law Judge ("ALJ"), who denied benefits to Taft.

The medical evidence presented to the ALJ was as follows. Dr. Gorge C. Risman interpreted a chest x-ray taken on May 4, 1976 as negative for pneumoconiosis (Category 0/1).[3] The x-ray was reread by Dr. R.H. Morgan as completely negative for pneumoconiosis. In his medical report dated May 4, 1976, Dr. Risman stated that considering the clinical history, physical examination, and laboratory data, he found minimal evidence of bronchopulmonary disease. He concluded that whatever symptoms existed were not attributable to exposure to industrial coal dust. During his deposition, Dr. Risman stated that he could not find any significant medical problems that would "contraindicate [Taft's] ability to perform any work." Another doctor, Daniel M. Scarbrough, submitted a one line note dated June 7, 1977 stating that Taft had "definite black lung (pneumoconiosis) as shown by a chest x-ray and clinical history." Next, Dr. Ben Branscomb, who was a "B" reader,[4] interpreted an x-ray dated December 12, 1974 as showing simple pneumoconiosis (Category 1/2). This same x-ray was reread by Dr. Thomas J. Payne, also a "B" reader, as completely negative for pneumoconiosis. In a December 16, 1974 medical report, Dr. Branscomb stated that Taft was 25% disabled. During his deposition, however, Dr. Branscomb explained that although he labeled Taft 25% disabled because of an altered lung, from a functional standpoint Taft's pulmonary function was normal and he was capable of continuing his previous coal mine job.

## II. DISCUSSION

■ Under the Act, the Secretary of Labor has promulgated regulations that provide that a miner who engaged in coal mine employment for at least ten years is pre-

---

tion program exists. See Underhill v. Peabody Coal Co., 687 F.2d 217, 219–20 (7th Cir.1982), for a discussion of the Act's history. See generally, Solomons, A Critical Analysis of the Legislative History Surrounding the Black Lung Interim Presumption and a Survey of its Unresolved Issues, 83 W.Va.L.Rev. 869 (1981).

2. Before the Board and this Court, ABC filed a cross-petition challenging the constitutionality of the presumption at 20 C.F.R. § 727.203. Because we affirm the judgment in ABC's favor, we need not reach the issue of constitutionality. For a discussion of this issue, see Alabama By-Products Corp. v. Killingsworth, 733 F.2d 1511 (11th Cir.1983), decided this date.

3. Pneumoconiosis is customarily classified as "simple" or "complicated." Simple is caused by dust alone and is identified by small opacities in the lung fields visible on a chest x-ray. Complicated, which is generally more serious, involves progressive massive fibrosis as a complex reaction to dust and other factors. Usery v. Turner

Elkhorn Mining Co., 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976).

Simple pneumoconiosis is classified into categories 1, 2, and 3 according to the profusion of small rounded opacities in the lung fields visible on x-ray, with category 1 indicating the least profuse and category 3 indicating very profuse. When the number of small opacities is insufficient for a diagnosis of category 1, the x-ray is classified as category 0. These four categories (0, 1, 2, and 3) are further subdivided into three subcategories, so that the range of categories is from 0/- through 3/4. The numerator represents the category in which the film is placed; the denominator represents the category that the reader also considered. Lapp, A Lawyer's Medical Guide to Black Lung Litigation, 83 W.Va.L.Rev. 721, 729–30 (1981).

4. Physicians can be certified as "A" (first) or "B" (final) readers according to their proficiency in interpreting chest x-rays of coal miners for evidence of pneumoconiosis. "B" is the higher classification of proficiency.

sumed to be totally disabled due to pneumoconiosis arising out of that employment if certain medical criteria are met, such as a chest x-ray establishing the existence of pneumoconiosis. 20 C.F.R. § 727.203(a)(1). Once the claimant has satisfied the requirements of the interim presumption, he has established a prima facie case of total disability. *See Director v. Beatrice Pocahontas Co.*, 698 F.2d 680, 682 (4th Cir.1983). The regulations then provide that the operator may rebut the interim presumption:

> (b) *Rebuttal of interim presumption.*
>
> In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if: ...
>
> (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title) ....

20 C.F.R. § 727.203(b).

The ALJ found that Taft had established the interim presumption of total disability due to pneumoconiosis. In determining whether ABC had rebutted the presumption under section 727.203(b)(2), the ALJ accepted the opinions of Dr. Branscomb and Dr. Risman, but discounted the report of Dr. Scarbrough because Dr. Scarbrough did not indicate the type and quality of x-ray relied on, any other objective tests used, or his conclusion as to disability. The ALJ also noted that Taft testified that at the time of the hearing, he could walk a half mile at a time and Taft acknowledged that when he had seen Dr. Risman, he had stated that he could possibly walk two miles. Thus, the ALJ concluded that ABC had rebutted the interim presumption.

On appeal, Taft contends that the ALJ erred in finding that ABC rebutted the presumption under section 727.203(b)(2) by medical evidence that Taft is able to do his usual coal mine work. Taft claims that medical evidence alone is not sufficient to rebut the interim presumption, but that the employer must also present vocational evidence that coal mine jobs are available that he could perform.[5] In other words, according to Taft, miners should be compensated not only for medical disability, but also for the lack of jobs for which they could compete. We find Taft's argument to be without merit.

The ALJ ruled in ABC's favor on the basis of subsection (b)(2), which provides that the presumption is rebutted if the evidence establishes that 1) the miner is able to do his usual coal mine work; *or* 2) the miner is able to do comparable and gainful work. ABC chose to rebut the presumption under the first clause of (b)(2), that the miner can do his usual coal mine work. Because subsection (b)(2) is disjunctive, ABC need not also prove that Taft can do comparable and gainful work.

Taft argues that under either clause, the employer must show vocational evidence. Although the employer may need to introduce vocational evidence to show that the miner is able to do comparable and gainful work,[6] Taft is incorrect in asserting that the employer must introduce vocational evidence to show that the miner is able to do

5. Before the Benefits Review Board, the Director argued the same position taken by Taft that medical evidence alone is not sufficient to rebut the presumption. On appeal before this Court, however, the Director abandoned that position in light of recent appellate decisions and adopted the position put forward by ABC. One member of the Benefits Review Board agreed with Taft's argument that the employer must prove the lack of vocational disability, but he concurred in the result based on stare decisis.

6. Although we do not reach this issue, we note that the Fourth Circuit and the Board have held that the employer must introduce evidence of economic job availability to establish that the claimant is able to do "comparable and gainful work" under 20 C.F.R. § 727.203(b)(2). *See Director v. Beatrice Pocahontas Co.*, 698 F.2d 680 (4th Cir.1983); *aff'g Blankenship v. Beatrice Pocahontas Co.*, 3 BLR 1–773, 1–782 (1981); *Jackson v. Westmoreland Coal Co.*, 3 BLR 1–52 (1981); *Johnson v. Cannelton Industries, Inc.*, 2 BLR 1081 (1980); *Sturnick v. Consolidation Coal Co.*, 2 BLR 1–972 (1980). *But see Crider v. Island Creek Coal Co.*, 723 F.2d 908 (6th Cir. 1983) (presumption is rebutted if the relevant medical evidence establishes that the individual is able to do his usual coal mine work or comparable gainful work).

his usual coal mine work. Under section 727.203(b)(2), the phrase "comparable and gainful work" is followed by a specific reference to 20 C.F.R. § 410.412(a)(1). Section 410.412(a)(1) defines "comparable and gainful work" in terms of vocational evidence.[7] The phrase, "usual coal mine work," however, is not followed by a reference to section 410.412(a)(1) for its definition. Unless otherwise specified, the Act should provide payment for medical disability and should not be a form of unemployment compensation. *Director v. Beatrice Pocahontas Co.*, 698 F.2d 680, 683 (4th Cir.1983). Thus, we hold that the employer need not introduce vocational evidence to establish that the claimant is able to do his usual coal mine work. The employer need only prove by medical evidence that the claimant is physically able to do his usual coal mine employment. *Accord Sherry v. Tesone Coal Co.*, 4 BLR 1–377, *aff'd without published opinion*, 696 F.2d 981 and 985 (3d Cir.1982); *Johnson v. Cannelton Industries, Inc.*, 2 BLR 1–1081 (1980); *Blankenship v. Beatrice Pocahontas Co.*, 3 BLR 1–773 (1981); *aff'd sub nom. Director v. Beatrice Pocahontas Co.*, 698 F.2d 680 (4th Cir.1983).

Taft cites *Fletcher v. Appalachian Coal Co.*, 1 BLR 1–980 (1978), *aff'd*, 679 F.2d 1086 (4th Cir.1982), to support his argument. In *Fletcher*, the claim was brought under section 402(f) of the Act and its implementing regulations at 20 C.F.R. § 410.412.[8] The Board held that under these regulations, once the miner has shown that he is physically unable to perform his usual coal mine work, the burden of proof shifts to the employer to show that the claimant is able to engage in gainful work available in the immediate area of his residence requiring the skills and abilities comparable to his former coal mine work. In this case, however, ABC has shown that Taft is physically able to perform his usual coal mine work and, therefore, it need not also prove that claimant is able to do comparable and gainful work. The Fourth Circuit has not applied *Fletcher* to a 20 C.F.R. § 727.203(b)(2) rebuttal case in which physical ability to engage in coal mine employment has been established. *See Director v. Beatrice Pocahontas Co.*, 698 F.2d 680, 682 (4th Cir.1983) (medical evidence alone is sufficient to establish that the claimant is not totally disabled by a physical impairment from performing his usual work in the coal mines).

We also find that *Haywood v. Secretary of Health and Human Services*, 699 F.2d 277 (6th Cir.1983), which Taft cites to support his position, is inapposite. In *Haywood*, the court held that the relevant inquiry for determining total disability is whether the claimant is vocationally disabled, not physically disabled. *Id.* at 285. *Haywood* can be distinguished because there the miner brought his claim under Part B of the Act and thus relied on the rebuttal requirements of 20 C.F.R. § 410.-490(c). In comparison, Taft brought this claim under Part C of the Act. *See Crider v. Island Creek Coal Co.*, 723 F.2d 908 (6th Cir.1983) (*Haywood* is not controlling under a Part C claim). Furthermore, although the language of 20 C.F.R. § 410.490(c) is similar to that of 20 C.F.R. § 727.203(b),[9]

---

**7.** 20 C.F.R. § 410.412(a)(1) provides:

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see §§ 410.424–410.-426)....

**8.** *See, supra,* note 7 for text of regulation.

**9.** The regulation at 20 C.F.R. § 410.490(c) reads in relevant part:

(c) *Rebuttal of presumption.* The presumption in paragraph (b) of this section may be rebuttal if: ...

(2) Other evidence, including physical performance tests (where such tests are available and their administration is not contraindicated), establish that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.-412(a)(1)).

Claimant also points out that under 30 U.S.C. § 902(f)(2), the regulations at 20 C.F.R. § 727.-203 cannot be more restrictive of the claimant's rights to benefits than the regulations at 20 C.F.R. § 410.490. Unlike *Haywood*, however, in this case the evidence shows that Taft is able to

*Haywood* can be distinguished on its facts. In *Haywood,* two doctors stated that the claimant's pneumoconiosis would prevent him from passing the requisite pre-employment physical for employment in a coal mine. In this case, the evidence established that Taft was physically able to return to the mines.[10]

Taft also contends on appeal that Dr. Branscomb's opinion and report should be discredited because he is hostile to the Act, that Dr. Branscomb's findings are insufficient to rebut the presumption of total disability, and that the ALJ failed to consider all relevant evidence. ABC contends that Taft has waived these objections by failing to raise them below. The Board did not address these issues because it found that on appeal, claimant did "not argue that the record evidence fails to support a finding that claimant is physically capable of performing his usual coal mine work." [11]

■ Under general rules of appellate review, an appellate court should not overrule an administrative decision unless the administrative body erred against objections presented to it. *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Board v. Finch,* 414 F.2d 1068, 1072 (5th Cir.1968). Although the rule is not inflexible, this is not a case of exceptional circumstances that would warrant such a review.

Accordingly, the judgment is AFFIRMED.

---

do his usual coal mine work. Thus, holding that the employer may rebut the presumption with medical evidence alone does not impose a more restrictive interpretation on § 727.203 than given to § 410.490 under *Haywood.*

10. In response to questions at oral argument, and in his supplemental brief, Taft makes a forceful argument concerning ABC's rebuttal burden of establishing that Taft "is able to do his usual coal mine work." Taft argues that it is simply a matter of common sense that ABC cannot be deemed to have carried its burden of proving that Taft could perform his usual coal mine work, if returning to his usual coal mine work would pose an unacceptable risk of aggravating a lung disease by virtue of continued

exposure to dust. *See Hatcher v. Consolidation Coal Co.,* 5 BLR 1–132, 1–155 to 60 (1982) (Miller, J. dissenting). On the other hand, ABC argues that 30 U.S.C. § 843(b) gives a miner with incipient pneumoconiosis the right to transfer to a job in a relatively dust free environment, and thus proof by the company that the miner is not actually disabled from performing his usual job is sufficient; any miner who is not disabled, but who would be at risk from continued exposure, could transfer away from the risk. We decline to address this issue because it was not presented to the Board.

11. In his concurrence, one Board member stated that the majority's reasons for refusing to consider this issue were unpersuasive.