751 F.2d 187
 SHAMROCK COAL COMPANY, INC., Petitioner,
v.
Sill LEE and the Director, Office of Workers' Compensation
Programs, United States Department of Labor; and
Benefits Review Board, Respondents.
 No. 84-3043.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 8, 1984.
Decided Jan. 4, 1985.
 
 Neville Smith (argued), Coal Company, Inc., Manchester, Ky., for petitioner.
 Benefits Review Board, U.S. Dept. of Labor, Brian E. Peters (argued), J. Michael O'Neill, U.S. Dept. of Labor, Washington, D.C., David G. Colson, Manchester, Ky., for respondents.
 Before ENGEL and KRUPANSKY, Circuit Judges, and GIBSON, Senior Circuit Judge.*
 ENGEL, Circuit Judge.
 
 
 1
 Shamrock Coal Company (Shamrock) petitions for review from the order of the Benefits Review Board, United States Department of Labor, (Board) granting benefits to claimant Sill Lee under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. (1982). Here Shamrock claims that the Administrative Law Judge (ALJ) applied the wrong legal standard in determining whether Sill Lee was able to do comparable and gainful work. We agree.
 
 
 2
 Sill Lee was born October 5, 1938. He worked in the coal mining industry from 1957 through 1975 at various jobs including hand loading coal by shovel, shooting coal with both explosives and pressured air, and operating a continuous miner. Lee, at the age of 37, retired from coal mine work due to constant headaches, chest pain, and shortness of breath. Since leaving employment in the coal mines in 1975, Lee has served as a part-time pastor for several small churches.
 
 
 3
 On March 9, 1976, Lee filed a claim for benefits under the Black Lung Benefits Act. The claim was referred to an ALJ who held a hearing on May 23, 1980. The ALJ issued a decision and order awarding benefits on June 29, 1981. The ALJ found that Lee was a coal miner who had 17 years of qualifying coal mine employment within the meaning of the Act. Because Lee established ten years of coal mine employment and produced positive x-ray reports of pneumoconiosis, the ALJ found that Lee was entitled to the interim presumption of total disability provided in 20 C.F.R. Sec. 727.203(a).[1] The ALJ found that Shamrock failed to rebut the presumption in accordance with 20 C.F.R. Sec. 727.203(b).[2] Hence, the ALJ granted benefits to Sill Lee. The Board affirmed the ALJ's order and decision.
 
 
 4
 Shamrock does not contend in its appeal that the ALJ erred in invoking the presumption of total disability as set forth in 20 C.F.R. Sec. 727.203(a). Nor does Shamrock contest the ALJ's findings that Sill Lee suffered from pneumoconiosis and was unable to do his usual coal mine work. Shamrock does contend that the ALJ applied the wrong legal standard in determining whether Shamrock rebutted the presumption of total disability by showing that Sill Lee was able to do comparable and gainful work.[3]
 
 
 5
 The ALJ held that once claimant has established a prima facie showing of total disability, the burden shifts to the employer to (1) actually identify the type of jobs requiring the miner's skills; (2) identify the location of the jobs; and (3) show that the miner would have a reasonable opportunity to be hired. Shamrock argues that the "reasonable opportunity to be hired" test is not a valid inquiry and is contrary to congressional intent. We agree that the "reasonable opportunity to be hired" test, at least as defined by the agency here, is at odds with the statutory test for determining whether a claimant can do comparable and gainful work.
 
 
 6
 Regulation 727.203(b) provides that the interim presumption of total disability due to pneumoconiosis may be rebutted if "in light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title)." Regulation 410.412(a)(1) sets forth the proper inquiry to determine whether an individual is able to do comparable and gainful work. Regulation 410.412(a)(1) provides:
 
 
 7
 (a) A miner shall be considered totally disabled due to pneumoconiosis if:
 
 
 8
 (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see Secs. 410.424 through 410.426);
 
 
 9
 Regulation 410.426[4] provides that claimant's age, education and work experience must be considered in determining whether claimant is able to do comparable and gainful work.
 
 
 10
 At oral argument, counsel for the Board stated that the Board has stopped using the "reasonable opportunity to be hired" test since Central Appalachian Coal Co. v. Fletcher, 679 F.2d 1086 (4th Cir.1982). In Fletcher, Central Appalachian Coal Co. (Central) sought review of a decision of the Benefits Review Board which granted benefits to claimant Fletcher under the Black Lung Benefits Act. The claimant properly invoked the Sec. 727.203(a) interim presumption of disability and Central sought to rebut the presumption under Sec. 727.203(b)(2) with evidence that claimant could do comparable and gainful work. The court rejected the Board's use of the "reasonable opportunity to hire" test in determining whether claimant could do comparable and gainful work. See Fletcher v. Central Appalachian Coal Co., 1 Black Lung Reporter 1-980 (1978); Fletcher v. Central Appalachian Coal Co., 3 Black Lung Reporter 1-10 (1981), aff'd, 679 F.2d 1086 (4th Cir.1982). The "reasonable opportunity to be hired" test, the court stated, "could be construed as requiring that the operator be successful as an employment agency to find the claimant a job." 679 F.2d at 1089. Congress did not intend such a result. Benefits are to be based on an inability to work due to disability not due to unemployment. We agree that the proper inquiry of the Board is to determine whether "in light of the impairment, age, education, and work experience or skills of the miner, he is unable to engage in any comparable and gainful work that is available to him in the immediate area of his residence." Id.
 
 
 11
 In Fletcher, the court affirmed the decision of the Board which granted benefits to the claimant. The court found that the Board applied the proper standards to reach its decision, notwithstanding the use of the "reasonable opportunity to hire" language. In the instant case, counsel for the Board has also urged the court to affirm the decision of the ALJ notwithstanding the use of the "reasonable opportunity to hire" language. We, however, cannot find that the ALJ applied the proper standard or that the error was otherwise harmless.
 
 
 12
 Shamrock's vocational expert, Dr. Elton, testified as to approximately 1045 light or sedentary jobs in the immediate area of claimant Lee's residence. He further testified that every questioned employer stated that he would not have any prejudice against employing a person who had a medical diagnosis of pneumoconiosis if that worker was capable of doing the assigned work. Finally, Dr. Elton stated that Sill Lee would have as good as opportunity to be employed as any other person with his background characteristics or any one of the persons who are presently working on these jobs if that person were applying for the first time.
 
 
 13
 The ALJ determined that Dr. Elton's testimony failed to satisfy the requirement that Sill Lee had a reasonable opportunity to be hired. The ALJ found Dr. Elton's testimony to be lacking because "Dr. Elton never states that any of the positions enumerated were presently available or that actual vacancies existed." ALJ opinion at 15. The ALJ concluded that since "there is no indication of any actual job vacancies with the employers listed by Dr. Elton, I find that, at most, the jobs he lists are only mere possibilities and do not establish that Claimant has a reasonable opportunity to be hired." Id. The ALJ required the employer to be a successful employment agency. It was clearly not the intent of Congress to impose such a difficult if not impossible burden upon a party opposing entitlement benefits. Hence, unlike in Fletcher, the ALJ clearly applied the wrong legal standard.
 
 
 14
 The Board also urges the court to affirm on grounds that Shamrock failed to present any evidence to rebut the interim presumption of total disability. The ALJ found that Shamrock's vocational expert was not competent to testify as to whether there were positions which required skills comparable to those needed in claimant Lee's coal mine work. The weight to be accorded Dr. Elton's testimony is properly a matter for the ALJ. However, in our opinion, it was error for the ALJ to have rejected the testimony on the basis of the witness' expertise and competence.
 
 
 15
 Dr. Elton is well-qualified to give expert vocational testimony. Dr. Elton has been a professor at the University of Kentucky for the past 25 years. He serves as a psychological consultant to the Chief of Counseling Psychology at the Veterans Administration Hospital in Lexington. This position requires Dr. Elton to assess residual capacities of patients for rehabilitation and possible job placement. He also has talked to employers to determine whether or not the employer would consider hiring a patient who is being discharged from the hospital. Dr. Elton has also been a vocational witness for the Social Security Administration for approximately 15 years. In addition to these general qualifications, Dr. Elton made vocational surveys of six or seven employers in the immediate area of claimant Lee's residence. He also familiarized himself with the publications of the State of Kentucky and the United States concerning employment and employment availability in the area. Hence, there is no question that Dr. Elton was qualified to give vocational testimony as to comparable positions.
 
 
 16
 The ALJ, however, found "that the expert testimony of Dr. Elton, fail[ed] to show sufficient firsthand or other knowledge of Claimant's coal mine work to allow him to express an informed opinion as to the comparability of the positions." ALJ opinion at 14. The ALJ was particularly concerned that Dr. Elton did not interview the claimant. The record, however, shows that Dr. Elton reviewed the claimant's file before the hearing and was present during the hearing in which claimant Lee described his work. Although a personal interview of the claimant would have given Dr. Elton greater knowledge on which to base his testimony, this factor goes to the weight of the testimony and not its admissibility. Hence, the ALJ erred in not finding Dr. Elton qualified to testify.
 
 
 17
 Having determined that the ALJ applied the wrong legal standard in determining whether claimant Lee was able to do comparable and gainful work and having determined that the ALJ erroneously disallowed the testimony of Dr. Elton, we reverse the decision and order of the Board granting benefits to claimant Lee. We, therefore, remand this case for a determination, consistent with this opinion, as to whether benefits should be granted to claimant Lee.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Sec. 727.203 Interim presumption
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410-428 of this title);
 
 
 [2]
 Sec. 727.203
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 [3]
 Shamrock does not argue that the ALJ erred in placing the burden upon it to show that Sill Lee was able to do comparable and gainful work. See Central Appalachian Coal Co. v. Fletcher, 679 F.2d 1086, 1088 (4th Cir.1982) (Once a claimant, seeking benefits under the Black Lung Benefits Act, establishes that he cannot return to his former coal mining job, burden of proof shifts to coal mine operator.)
 
 
 [4]
 Sec. 410.426 Determining total disability: Age, education, and work experience criteria
 (a) Pneumoconiosis which constitutes neither an impairment listed in the appendix to this subpart (see Sec. 410.424), nor the medical equivalent thereof, shall nevertheless be found totally disabling if because of the severity of such impairment, the miner is (or was) not only unable to do his previous coal mine work, but also cannot (or could not), considering his age, his education, and work experience, engage in any other kind of comparable and gainful work (see Sec. 410.412(a)(1) ) available to him in the immediate area of his residence. A miner shall be determined to be under a disability only if his pneumoconiosis is (or was) the primary reason for his inability to engage in such comparable and gainful work. Medical impairments other than pneumoconiosis may not be considered.
 * * *
 (e) When used in this section, the term "age" refers to chronological age and the extent to which it affects the miner's capacity to engage in comparable and gainful work.
 (f) When used in this section, the term "education" is used in the following sense: Education and training are factors in determining the employment capacity of a miner. Lack of formal schooling, however, is not necessarily proof that a miner is an uneducated person. The kinds of responsibilities with which he was charged when working may indicate ability to do more than unskilled work even though his formal education has been limited.