Dorothy RUSSELL, widow of Carl Russell, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 87–1136.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 27, 1987.

Decided Sept. 15, 1987.

Harold B. Culley, Jr., West Frankfort, Ill., for petitioner.

Richard Zorn, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before POSNER, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Dorothy Russell married Carl Russell, a coal miner, in 1934. They were divorced in 1965. When Carl died in 1977, he was receiving benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–62. A "surviving divorced wife" of an eligible miner is entitled to benefits under the Act if

> for the month preceding the month in which the miner died, [she] was receiving at least one-half of her support, as determined in accordance with regulations prescribed by the Secretary [of Labor], from the miner, or was receiving substantial contributions from the miner (pursuant to a written agreement) or there was in effect a court order for substantial contributions to her support from the miner at the time of his death.

30 U.S.C. § 902(e). The Secretary's regulations largely track the statute. See 20 C.F.R. § 725.217. See also *Director, OWCP v. Ball*, 826 F.2d 603, 605–06 (7th Cir.1987).

The Benefits Review Board, affirming the decision of an administrative law judge, denied Dorothy's application for benefits, concluding that she did not meet the support test of the statute. The decree of divorce did not require Carl to support Dorothy; the two never entered an agreement for support. Carl also was not contributing anything to Dorothy's support when he died. This is hardly surprising. Coal miners' pneumoconiosis (black lung) is a progressive, debilitating disease. Miners disabled by pneumoconiosis are not likely to be earning much and have correspondingly little to contribute to the support of divorced spouses. Under § 902(e) the condition that gives rise to a claim for benefits also makes it improbable that the divorced spouse will be able to obtain them. But Congress is entitled to be parsimonious and limit benefits to the replacement of lost support, in the unlikely event the divorced spouse receives any. (The miner's spouse at the time of his death need not establish support to be entitled to benefits.)

Dorothy Russell tried to qualify under § 902(e) by arguing that Carl "died" in 1968, while he was still furnishing more than half of her support. Carl was declared incompetent and institutionalized in Illinois that year. An incompetent person cannot make contracts, and Dorothy's counsel offers us this vivid expression of the position:

> From the time a person is adjudged to be incompetent and incapable of caring for his property and effects, until he is restored, such person has no more power to act for himself than if he were dead. . . .

*In re Estate of Nelson*, 329 Ill.App. 243, 67 N.E.2d 698 (1st Dist.1946). If an incompetent dies a "civil death" in Illinois, counsel continues, why not treat him as dead for every purpose? This train of thought can be traced to Act II of Gilbert and Sullivan's *The Mikado* (1885), in which Ko-Ko (the Lord High Executioner) tells the Mikado why he reported beheading Nanki-Poo (the Heir Apparent), although he had not:

> When your Majesty says, "Let a thing be done," it's as good as done—practically, it *is* done—because your Majesty's will is law. Your Majesty says, "Kill a gentleman," and a gentleman is told off to be killed. Consequently, the gentleman is as good as dead—practically, he *is* dead—and if he is dead, why not say so?

In law as in *The Mikado* a metaphor must not be confused with the real thing. If Dorothy had smothered Carl in 1969, she would have been guilty of murder notwithstanding his condition. See *In re Estate of Shelton*, 19 Ill.App.3d 542, 543, 311 N.E.2d 780, 781 (4th Dist.1974) (that "a civil death . . . is not tantamount to an actual death" is "quite obviously true"). Even if Carl "died" in 1968 for purposes of contract law in Illinois, he died again in 1977 for purposes of federal black lung benefits. "[T]he time of his death" in § 902(e) is a term of federal law, the meaning of which is unaffected by metaphors in Illinois cases. "Death" in § 902(e) means physical death, not senescence. If Dorothy really believed that Carl "died" in 1968, why did she wait until after his death in 1977 to file a claim for benefits? We put to one side the knotty question what to make of "brain

death"; Dorothy does not contend that all of Carl's mental functions ceased in 1968.

Although counsel gets a star for creativity, it does not afford bragging rights. Creativity to this degree is scarcely distinguishable from frivolousness. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081–82 (7th Cir.1987); *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986); *In re TCI Ltd.,* 769 F.2d 441, 447–48 (7th Cir.1985). Moreover, the vivid language attributed to *Estate of Nelson* does not appear in that case, for the court did not publish its opinion; counsel quoted from a headnote added by the publisher, without alerting us to the source of the language. The closest thing in a real opinion appears in *Bradshaw v. Lucas,* 214 Ill.App. 218, 223 (1919), which counsel did not cite. We expect more care and candor from members of our bar than have been provided in this case.

AFFIRMED