DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Orpha HILL (86–3906), Jenna L. Holmes (86–3925), Respondents.

Nos. 86–3906, 86–3925.

United States Court of Appeals, Sixth Circuit.

Submitted Aug. 18, 1987.

Decided Oct. 14, 1987.

Thomas L. Holzman, Michael J. Denney, Office of the Solicitor, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for petitioner.

Geoffrey B. Steiner, Hamilton & Douglas, P.A., Frank E. Hamilton, III, Tampa, Fla., for respondents.

Before MARTIN, JONES and WELLFORD, Circuit Judges.

PER CURIAM.

The Director, Office of Workers' Compensation Programs ("Director") requests review of the Benefits Review Board's ("Review Board") decisions that individuals who receive social security payments based on the earnings of their former spouses are "dependent" upon those spouses for purposes of receiving black lung benefits. For the reasons set forth below, we reverse the Review Board's awards of black lung benefits to the respondents.

## I.

These two cases are factually similar and involve the same question of law. The facts of each case, however, will be set out separately.

### No. 86–3906

Orpha and Claude Hill were married on April 27, 1927. They were divorced on May 6, 1952. The divorce decree ordered Mr. Hill to pay Mrs. Hill ten dollars per week for child support. No payments were awarded for the support of Mrs. Hill.

Claude Hill was a miner, and beginning in October 1970, he began receiving black lung benefits. He continued to receive these benefits until his death in November 1980. Following his divorce, Mr. Hill married Nadine Hill. The second Mrs. Hill was paid black lung benefits as Mr. Hill's surviving spouse from November 1980 until May 1982 when, upon her remarriage, the payments were terminated.

Orpha Hill began receiving social security old age retirement benefits based on Claude Hill's earnings record in January 1973. She is presently continuing to receive these benefits. In 1980, these benefits were converted to surviving spouse's benefits following Claude Hill's death. As of now, these benefits are Orpha Hill's sole source of support.

Orpha Hill never remarried after her divorce. On June 20, 1981, she filed a claim for black lung benefits as the surviving spouse of Claude Hill. Her claim was administratively denied by the Department of Labor based on her failure to establish her dependence on Claude Hill prior to his death as required by the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (1982) ("Black Lung Act").

Thereafter, Orpha Hill requested a hearing and one was held before an administrative law judge ("ALJ") on May 9, 1984 in Tampa, Florida. On November 24, 1984, the ALJ issued a decision and order awarding benefits. The ALJ found that Hill's receipt of old age retirement benefits from

the Social Security Administration ("SSA") based on Claude Hill's earnings record satisfied the requirement of dependence contained in the Black Lung Act.

The Director thereafter filed a timely Notice of Appeal with the Review Board. The Director argued that the ALJ had erred in finding that Orpha Hill had established her dependence on Claude Hill prior to his death. The Review Board rejected this argument and affirmed the ALJ's award of benefits. The Review Board held that SSA benefits derived from the miner's earnings record and received by a claimant constituted "contributions" from the miner to the claimant's support. The Review Board further noted that this interpretation was consistent with the clear intent of the relevant regulations, even though in some cases such an interpretation may result in an award of benefits where the miner has not directly supported the spouse for an extended period of time. *Hill v. Director, OWCP*, BRB No. 84–2786 BLA, at 3 (Aug. 5, 1986). The Director then petitioned for review in this court.

*No. 86–3925*

Jenna Holmes married Paul Holmes on September 3, 1927. They were divorced in July 1946, but remarried in April 1947. On April 24, 1970, the two executed a separation agreement which provided for the distribution of marital assets. The agreement also provided for a payment of $11,000.00 by Mr. Holmes to Mrs. Holmes. Mr. Holmes also agreed to pay alimony of $200.00 per month until the time when Mrs. Holmes became eligible to receive social security benefits. Once Mrs. Holmes began receiving such benefits, the alimony payments would stop. The agreement further provided that alimony payments would be reduced by any earnings of the wife and would cease if Mrs. Holmes were to remarry.

The Holmes were officially divorced in 1970, and Mrs. Holmes received $200.00 per month from Mr. Holmes until 1972, when she became eligible to receive SSA old age retirement benefits, which she draws from the earnings record of Paul Holmes. Mr. Holmes is currently voluntarily paying Mrs. Holmes $50.00 per month to supplement her SSA benefits.

Mrs. Holmes has not remarried since the divorce. Mr. Holmes applied for black lung benefits and began receiving such benefits on July 13, 1979. On May 28, 1980, Mrs. Holmes filed an application for benefits under the Black Lung Act. Her claim, which was based on Mr. Holmes' mining employment, was administratively denied by the Department of Labor based on Mrs. Holmes' failure to establish her dependence on the miner.

Mrs. Holmes thereupon requested a formal hearing, which was held on March 16, 1983 before an ALJ. On September 27, 1983, the ALJ issued a decision and order denying benefits. The ALJ found that Mrs. Holmes' receipt of old age retirement benefits from the SSA based on Mr. Holmes' earnings record did not satisfy the requirement of dependency contained in the Black Lung Act.

Mrs. Holmes thereafter filed a timely Notice of Appeal with the Review Board. She argued that the ALJ had erred in finding that she had not established her dependence on the miner.

On August 6, 1986, the Review Board reversed the ALJ's denial of benefits. The Review Board held that the ALJ erred in finding that SSA benefits derived from the miner's earnings record and received by the claimant did not constitute contributions from the miner. The Director then petitioned for review in this court.

**II.**

These consolidated cases involve the Review Board's interpretation of a legal question. Courts of appeals retain plenary authority to review the Review Board's legal conclusions. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Since the Review Board does not engage in policy-making functions, its interpretation of the Act is "not entitled to any special deference from the courts." *Potomac Electric Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n. 18,

101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980).

### III.

The key question in this appeal is whether an individual who receives SSA benefits based on the earnings of her former spouse is dependent upon that spouse for purposes of black lung benefits. The claimants in these two appeals are situated differently. One is a "surviving divorced wife," while the other is simply a "divorced wife." Although the women are covered by different regulations, the analysis of their claims is similar.

Orpha Hill is the surviving spouse of a deceased miner. For purposes of the Black Lung Act, she is considered a "surviving divorced wife." *See* 30 U.S.C. § 902(e) (1982). The definition of a "surviving divorced wife," is a "woman divorced from an individual who has died, but only if she had been married to the individual for a period of 10 years immediately before the date the divorce became effective." 42 U.S.C. § 416(d)(2) (1982). In order to qualify for benefits under the Black Lung Act, the "surviving divorced wife" must have "for the month preceding the month in which the miner died, ... receiv[ed] at least one-half of her support, as determined in accordance with regulations prescribed by the Secretary, from the miner, or was receiving substantial contributions from the miner (pursuant to a written agreement) or there was in effect a court order for substantial contributions to her support from the miner at the time of his death." 30 U.S.C. § 902(e). *See also* 20 C.F.R. § 725.-217 (1987).

The relevant regulations define "one-half support" in the following manner:

The term "one-half support" means that the miner made regular contributions, in cash or in kind, to the support of a divorced spouse at the specified time or for the specified period, and that the amount of such contributions equalled or exceeded one-half the total cost of such individual's support at such time or during such period.

20 C.F.R. § 725.233(g). "Contributions" is defined as follows:

The term "contributions" refers to contributions actually provided by the contributor from such individual's property, or the use thereof, or by the use of such individual's own credit.

*Id.* § 725.233(b).

Jenna Holmes is considered to be a "divorced wife." A "divorced wife" is a "woman divorced from an individual, but only if she had been married to such individual for a period of 10 years immediately before the date the divorce became effective." 42 U.S.C. § 416(d)(1). For purposes of qualifying for black lung benefits, a "divorced wife" is one "who is receiving at least one-half of her support, as determined in accordance with regulations prescribed by the Secretary, from the miner, or is receiving substantial contributions from the miner (pursuant to a written agreement), or there is in effect a court order for substantial contributions to her support from such miner." 30 U.S.C. § 902(a)(2). *See also* 20 C.F.R. § 725.207. The definitions of "one-half support" and "contributions" for the purposes of a "divorced wife" are the same as the definitions for "surviving divorced wife" discussed above.

### IV.

The Review Board has consistently held that SSA payments to a divorced spouse that are based on the miner's earnings can be considered contributions from the miner's property or credit pursuant to 20 C.F.R. § 725.233(b), and calculated as support from the miner pursuant to 20 C.F.R. § 725.233(g). The Review Board in *Fletcher v. Director, OWCP,* — BLR —, BRB No. 83–790 BLA (Mar. 27, 1986), *aff'd on reconsideration en banc,* — BLR —, at 2 (July 7, 1986) stated:

Although a regulatory scheme provides for and administers these payments [SSA benefits], the benefits actually derive from the miner's earnings over the course of his lifetime. The earnings record of the miner is a form of credit within the purview of Section 725.233(b), and that credit provides the basis for

determining the amount payable to the miner's surviving divorced spouse. But for contributions by the miner, claimant would not receive Social Security benefits.

The Review Board's position is, in essence, that SSA benefits constitute payments made by a third party *from* the miner's property.

The Director raises two counterpoints to the Board's position. First, the Director argues that social security taxes paid by the miners do not constitute a credit upon which they are entitled to draw. The Director's position was succinctly stated by the ALJ in his *Holmes* decision and order:

> The social security benefits which the claimant is receiving are paid pursuant to an entitlement which runs directly to her from the government. Although the benefits are partially derived from F.I. C.A. taxes collected from the miner (and millions of other taxpayers), the funds so collected by the government ceased to be the miner's "property" after their collection.

J.App. 2.

This interpretation is supported by Supreme Court precedent. In *Flemming v. Nestor*, 363 U.S. 603, 609–10, 80 S.Ct. 1367, 1371–72, 4 L.Ed.2d 1435 (1960), the Court stated that:

> [E]ach worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system of taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.

The Director's second point is that a divorced spouse who is receiving SSA benefits which are based on her ex-husband's earnings is not dependent on her ex-husband within the meaning of dependency contemplated by the Black Lung Act. The Director contends that the money received by the wife is coming directly from the government and that the ex-husband is making no contribution to the wife whatsoever. In support of this position, the Director points out that upon Claude Hill's death in 1980, Orpha Hill's economic situation was not altered. She continued to receive monthly payments from the SSA. The Director argues that if in fact Orpha Hill was dependent on her husband as contemplated by the Act, then she would have suffered an economic loss as a result of her ex-husband's death. The Director also points out that the benefits received by Jenna Holmes would continue even if her ex-husband were to die. The receipt of such benefits, according to the Director, is in no way dependent upon any action by her ex-husband.

Given the definition of dependent, i.e., relying on another for support, this court agrees with the Director that the claimants in these two appeals are (or were) *not* dependent upon their ex-husbands. Neither claimant is receiving any direct substantial support from her ex-husband. (Jenna Holmes does receive $50.00 per month from her ex-husband, however, this falls far short of the one-half support required by the Black Lung Act.) While it is true that, as the Review Board states, without the contributions of the ex-husbands neither claimant would be entitled to SSA benefits, this does not necessarily mean that the claimants are dependent upon their husbands. Indeed, any dependency that is based on these benefits is tenuous at best. Social security is not operated like an annuity. Those who contribute to it are not entitled to a sum certain in return. There is no guarantee that one who has paid into the fund will ever receive anything from the fund. Once money is paid into the fund, any connection between the money and the contributor is broken. The money becomes the property of the federal government, which is then responsible for making payments to eligible recipients in accordance with statutory standards. Thus, when Mr. Hill and Mr. Holmes made their contributions to the fund, they retained no property interest in the money paid. Thus, payments made subsequently

to their wives by SSA were derived not from the miner's property, but rather from funds held by the federal government under a statutory scheme for benefits under prescribed conditions.

The Director's point that the death of Orpha Hill's husband had no impact on her economic condition is a telling one. If Mrs. Hill had indeed been dependent upon her ex-husband for support, then clearly his death would have had serious economic ramifications for her. However, the fact that she continued receiving monthly payments and her economic situation remained unchanged provides strong proof that she was not dependent on her ex-husband for support. The same can be said for Jenna Holmes.

Similar reasoning was employed by the Seventh Circuit in *Director, OWCP v. Ball,* 826 F.2d 603 (7th Cir.1987), a case factually similar to this one. In *Ball,* the respondent, Aleen Ball, married Robert Ball, a miner, in 1931 and divorced him in 1954. The divorce decree ordered Mr. Ball to pay Mrs. Ball ten dollars a week for child support. No payments were awarded for the support of Mrs. Ball. In 1972, Mr. Ball retired and began receiving social security and black lung benefits. In 1973, Mrs. Ball began receiving SSA old age retirement benefits based on Mr. Ball's earnings record. In 1975, these benefits were converted to surviving spouse's benefits following Robert Ball's death. These benefits were Mrs. Ball's sole means of support.

In 1978, Mrs. Ball, as a "surviving divorced wife," sought benefits under the Black Lung Act. Benefits were administratively denied by the Department of Labor and the ALJ. The Review Board reversed and awarded benefits to Mrs. Ball. The Review Board held that her SSA benefits fulfilled the "dependency" and "support" requirements of the Black Lung Act.

The only issue considered by the Seventh Circuit was whether Mrs. Ball's SSA benefits qualified as support from a miner under the Black Lung Act. The court held that the SSA benefits received by Mrs. Ball did not meet the requirements set out in the Black Lung Act and reversed her award.

The court held that the government's social security payments to the respondent were not payments from Mr. Ball's property. The court rejected Mrs. Ball's attempt to characterize the benefits as "contributions" from her ex-husband's wages, thereby negating her effort to fulfill the Black Lung Act's requirement of financial dependency. The court stated:

Mrs. Ball's characterization of Mr. Ball's contributions to the fund and her receipt of money from the fund is only partially true. It is correct, for example, that Mr. Ball's contributions to the fund were his property at the time of contribution. And it is also true that the amount of Mr. Ball's contributions was related to the amount of his wages. But it is not true that the government merely held Mr. Ball's property in trust for future payment to Mrs. Ball. The funds available for payment of social security benefits are generated from an excise tax on employers, 26 U.S.C. § 3111(a) (1982), as well as from an income tax on individual wage earners, 26 U.S.C. § 3101(a) (1982). A recipient of social security benefits has no substantive right to a certain amount of benefits based on the amount contributed to the fund by employer and employee; rather, the recipient's amount of benefits is controlled by operation of law under 42 U.S.C. § 402 (1982), a separate statutory scheme.... As a result, "eligibility for [social security] benefits, and the amount of such benefits, do not in any true sense depend on contribution to the program through the payment of taxes," which are levied on employer and employee alike. *Flemming v. Nestor,* 363 U.S. 603, 609, 80 S.Ct. 1367, 1371, 4 L.Ed.2d 1435 (1960).

*Ball,* at 607.

The court supported its conclusion that the SSA benefits received by Mrs. Ball were not Mr. Ball's property by noting that Mrs. Ball experienced no direct economic loss upon her ex-husband's death. The court held that the Black Lung Act requires a demonstration of actual economic

loss. The court noted Congress had modelled the Black Lung Act on the Social Security Act which, prior to its amendment, required such a demonstration. In 1972, Congress deleted the demonstration of actual economic loss from the Social Security Act, but did not, and has not, deleted the requirement from the Black Lung Act. *Id.* at 608. The *Ball* court stated;

> If Congress had wanted to eliminate the requirement of showing an actual economic loss it could have done so, as evidenced by the social security amendments of 1972. The fact that it did not do so indicates Congress intended to retain the requirement of a surviving divorced wife showing economic loss in demonstrating dependency.

*Id.*

The *Ball* court suggested the distinction in the two Acts lies in the differing nature of their schemes. Social security is a federal pension program. All persons who qualify because of age or employment status receive benefits. *Id.* at 608–09. The Black Lung Act, however, is a disability pension and provides benefits only to those miners disabled by black lung disease and to those persons who are dependent upon them for their support. Black lung benefits, unlike social security benefits, "are not paid to all miners who reach a certain age or who have worked a certain amount of time in mining." *Id.* at 608–09.

We agree with the Seventh Circuit that Congress intended no black lung benefits accrue to a former spouse unless that spouse can demonstrate a substantial economic loss due to her ex-spouse's death. Only where the former husband is actually contributing to his ex-spouse's support does his death affect her economic situation. That is not the situation in Mrs. Hill's case nor would it be in Mrs. Holmes' case if her ex-husband should die.

Therefore, we hold that the social security payments received by the two claimants in this case are not contributions from a miner within the meaning of 20 C.F.R. § 725.233(b). Because they are not contributions, they do not form part of the "one-half support" as defined in 20 C.F.R.

§ 725.233(g). Thus, since neither of the claimants was receiving one-half of her support from the miner, neither of them meets the dependency requirements of 20 C.F.R. § 725.207 and § 725.217, and consequently, neither of them is entitled to black lung benefits.

Accordingly, the Review Board's decisions granting black lung benefits to the respondents are REVERSED.