DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

Addie SAULSBERRY, Respondent.

No. 88–4182.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1989.

Decided Oct. 11, 1989.

Rehearing Denied Dec. 12, 1989.

Michael J. Denney, Priscilla A. Schwab (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for petitioner.

* The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern Dis-

C. Terry Earle (argued), Greenville, Ky., Mary L. Wilson, Central City, Ky., for respondent.

Before KEITH and GUY, Circuit Judges, and HULL, Chief District Judge.*

KEITH, Circuit Judge.

The Director, Office of Worker's Compensation Programs, United States Department of Labor, petitions for review of a decision of The Benefits Review Board awarding black lung disability benefits to respondent, the dependent daughter of a deceased miner. This case poses the question of whether a prior determination of survivor benefit eligibility pursuant to Part B of Title IV of the Black Lung Benefits Act, *30 U.S.C. §§ 921–925*, eliminates the necessity of independently establishing the miner's total disability due to pneumoconiosis under the criteria in Part C of the Act in order to establish entitlement under *20 C.F.R. § 725.218(a)(2)*. Because we conclude that no such independent showing of disability is required, we deny the petition for review.

The miner, who never filed a claim, died in 1970. The miner's widow, who is the mother of respondent, was awarded benefits under Part B of the Act in 1971. In 1978, respondent filed her claim for benefits under Part C of the Act. *29 C.F.R. § 725.218* sets forth the conditions of entitlement for a surviving child:

(a) An individual is entitled to benefits where he or she meets the required standards of relationship and dependency under this subpart (see 725.220 and 725.221) and is the child of a deceased miner who:

(1) Was receiving benefits under section 415 or Part C of Title IV of the Act at the time of death as a result of a claim filed prior to January 1, 1982; or

(2) Is determined as a result of a claim filed prior to January 1, 1982, to have been totally disabled due to pneumoconi-

trict of Tennessee, sitting by designation.

osis at the time of death or to have died due to pneumoconiosis. A surviving dependent child of a miner whose claim is filed on or after January 1, 1982, must establish that the deceased miner's death was due to pneumoconiosis in order to establish entitlement to benefits, except where entitlement is established under 718.306 of Part 718 of a claim filed prior to June 30, 1982.

(b) A child is not entitled to benefits for any month in which a miner, or the surviving spouse or surviving divorced spouse of a miner, establishes entitlement to benefits.

Respondent's claim was denied, and a hearing was held before an ALJ. The ALJ found that the miner did not have pneumoconiosis, and therefore denied benefits. On appeal to the Benefits Review Board, the Director requested a remand due to the failure of the ALJ to specify the regulations under which he considered the evidence or to set forth his rationale, *5 U.S.C. § 557(c)(3)*, or to consider lay evidence in the absence of medical evidence. *20 C.F.R. § 727.203(a)(5)*. Instead, the Board reversed the ALJ's decision, holding that the prior determination of pneumoconiosis made pursuant to Part B of the Act satisfied the requirements of *20 C.F.R. § 725.218(a)(2)*.

In his petition for review, the Director argues that this court should accept its interpretation of *20 C.F.R. § 725.218(a)* that prior determinations of entitlement under Part B are insufficient for establishing entitlement under *20 C.F.R. § 725(a)(2)*. The Director's position based primarily on the fact that the federally-financed Part B program is more liberal than the mine owner-financed Part C program; thus, the criteria for establishing entitlement under Part B cannot simply be engrafted onto Part C claims. Moreover, argues the Director, *20 C.F.R. § 725.218(a)(1)* becomes superfluous if any previous finding of entitlement were sufficient to establish entitlement under Part C under *§ 725.218(a)(2)*.

The Director's interpretation of eligibility criteria "is deserving of substantial deference unless it is plainly erroneous or inconsistent with the regulation." *Mullins Coal Company v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987). However, in this case, the Director's interpretation is contrary to the plain wording of *20 C.F.R. § 725(a)(2)*. That subsection does not qualify the words "a claim;" it merely requires that the disability be "determined as the result of *a claim* filed prior to January 11, 1982." Because it is undisputed that respondent meets the relationship and dependency requirements of *20 C.F.R. §§ 725.220 and 725.221*, and because respondent's mother's claim, which was filed prior to January 1, 1982, necessarily involved a determination of total disability due to pneumoconiosis or death due to pneumoconiosis, the Board did not err in granting benefits under *20 C.F.R. § 725.218(a)(2)*.

Accordingly, the petition for review is DENIED.

RALPH B. GUY, Jr., Circuit Judge, dissenting.

As the majority correctly states, this case presents the sole issue of whether a child of a miner, whose widow was receiving benefits under Part B of the Black Lung Benefits Act (Act), 30 U.S.C. §§ 901–960, need independently establish the miner's total disability due to pneumoconiosis under the criteria in Part C of the Act to establish entitlement under 20 C.F.R. § 725.218(a)(2). For the following reasons, I would hold that under these circumstances the miner's total disability due to pneumoconiosis must be established under Part C to entitle the claimant to benefits. I would therefore reverse the decision of the Benefits Review Board and remand this case for further proceedings.

The Director, Office of Workers' Compensation Programs, asserts in this appeal that the Board erred in holding that claimant need not independently establish the miner's total disability due to pneumonio-

sis.[1] This assertion calls upon this court to interpret 20 C.F.R. § 725.218, which states:

§ 725.218 Conditions of entitlement; child.

(a) An individual is entitled to benefits where he or she meets the required standards of relationship and dependency under this subpart (see § 725.220 and § 725.221) and is the child of a deceased miner who:

(1) Was receiving benefits under section 415 or Part C of title IV of the Act as a result of a claim filed prior to January 1, 1982, or

(2) Is determined as a result of a claim filed prior to January 1, 1982, to have been totally disabled due to pneumoconiosis at the time of death, or to have died due to pneumoconiosis. A surviving dependent child of a miner whose claim is filed on or after January 1, 1982, must establish that the miner's death was due to pneumoconiosis in order to establish entitlement to benefits, except where entitlement is established under § 718.306 of Part 718 on a claim filed prior to June 30, 1982.

(b) A child is not entitled to benefits for any month for which a miner, or the surviving spouse or surviving divorced spouse of a miner, establishes entitlement to benefits.

There is no dispute in this case that the miner's child, Addie, meets the relationship and dependency tests of sections 725.220 and 725.221. The dispute concerns whether Addie meets the requirements of section 725.218(a)(2). The Director argues that the determination of total disability due to pneumoconiosis made in relation to the widow's claim in approximately 1971 cannot be used to automatically entitle Addie to benefits on a claim filed in 1978. In order to fully understand the Director's argument in this case, a brief overview of the Black Lung Benefits Act is necessary at this point.

Part B of Title IV of the Act, codified at 30 U.S.C. §§ 921–925, governs claims filed on or before June 30, 1973, as was the widow's claim in this case. The Secretary of Health and Human Services, through the Social Security Administration, is responsible for adjudicating these claims and paying benefits to eligible claimants. Benefits are paid out of general federal revenues. Part B also governs a claim filed by the survivor of a miner entitled to benefits under Part B if filed within six months of the miner's death or before January 1, 1974, whichever is later. 30 U.S.C. § 924(a)(1); 20 C.F.R. § 410.231(d); *see also* 20 C.F.R. § 725.1(b). A surviving child who files a claim within that time frame and whose parent was receiving benefits under Part B is automatically entitled to survivor's benefits upon meeting certain other conditions. 30 U.S.C. § 922(a)(3); 20 C.F.R. § 410.212.

Part C of the Act, codified at 30 U.S.C. §§ 931–945, governs claims filed on or after January 1, 1974.[2] These claims are administered and adjudicated by the Department of Labor under the criteria in effect at the time the claim is filed. 30 U.S.C. § 902(f). Benefits are paid by coal mine operators or, where no operator can be held liable, by the Black Lung Disability Trust Fund, financed by an excise tax on the production of coal. *See* 20 C.F.R. § 725.1(g). The Trust Fund was established as part of the 1977 Reform Act in order "to end all federal financial responsibility for disabled miners' benefits under Part C." *Director, Office of Workers' Compensation Programs v. Bivens,* 757 F.2d 781, 783 (6th Cir.1985).

In the case before us, the widow was found entitled to benefits under Part B. Addie, the surviving disabled dependent child, filed her claim in 1978, not within six months of the widow's death or by January 1, 1974. Therefore, Addie's claim for benefits is governed by Part C. Section 725.-218(a), the section at issue in this case, pertains to claims filed under Part C. *See*

---

1. The child of the miner, Addie Saulsberry, is deceased and her estate is therefore referred to as "claimant."

2. 30 U.S.C. § 925 governs claims filed between June 30, 1973, and January 1, 1974. This "transition" period is not relevant to this case.

20 C.F.R. § 725.2(b). Section 725.218(a)(2) would entitle Addie to benefits as "the child of a deceased miner who ... [i]s determined as a result of a claim filed prior to January 1, 1982, to have been totally disabled due to pneumoconiosis at the time of death." The Board found that this requirement was met by the fact that the widow was found entitled to benefits under Part B (prior to 1974). The Director argues that automatic Part C entitlement, using section 725.218(a)(2), is only for survivors of those whose own entitlement is based on Part C of the Act.

There is no determinative precedential authority on either side of this issue. The Board's decision represents an interpretation of a legal question, and courts of appeal retain plenary authority to review the Board's legal conclusions. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1119 (6th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). Furthermore, the Board's interpretation of regulations is not entitled to any special deference from the courts because it is not a policy-making board, but an adjudicatory tribunal. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). Instead, the Director's statutory interpretation is entitled to deference because the Director is vested with authority to administer the Act. *Saginaw Mining Co. v. Mazzulli,* 818 F.2d 1278, 1283 (6th Cir. 1987); *see also Director, OWCP v. Oglebay Norton Co.,* 877 F.2d 1300 (6th Cir. 1989). The Director received this authority as designee of the Secretary of Labor. 20 C.F.R. § 701.202(f); *see also Hillibush v. U.S. Dept. of Labor,* 853 F.2d 197, 203 n. 9 (3d Cir.1988). Since the Secretary of Labor was expressly granted specific authority to establish criteria for eligibility under Part C of the Act, the Secretary's interpretation is entitled to substantial deference "unless it is plainly erroneous or inconsistent with the regulation." *Mullins Coal Co. v. Director, Office of Workers' Compensation Programs,* 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987), quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

In this case, the Board based its decision mainly on two grounds. The Board first stated that because the widow was awarded benefits, a determination must have been made at 20 C.F.R. Part 410 that the miner was totally disabled due to pneumoconiosis at the time of his death or that death was due to pneumoconiosis. Since this determination was made, the Board then concluded that claimant satisfies the language of section 725.218(a)(2). Secondly, the Board based its decision on *Hill v. Director, Office of Worker's Compensation Programs,* 9 B.L.R. 1–126 (1986), and stated that this case was a reaffirmation of its position in *Hill.*

*Hill* involved an interpretation of section 725.212(a)(3). This section contains language nearly identical to section 725.218(a), only it pertains to spouses instead of children. One of the issues in *Hill* concerned whether a surviving divorced spouse (claimant) could satisfy the requirements of section 725.212(a)(3) when the miner received benefits under Part B. The Board held that the surviving divorced spouse did not have to reestablish "total disability due to pneumoconiosis" under Part C. The other issue in *Hill* concerned whether claimant's receipt of Social Security Administration benefits qualified as support from the deceased miner. The Board held that SSA benefits could qualify. The Director appealed the case, and this court reversed on the SSA benefits issue, thereby vacating the award of benefits. *Director, Office of Workers' Compensation Programs v. Hill,* 831 F.2d 635 (6th Cir.1987). The other issue of automatic entitlement under Part C based on entitlement under Part B was not reached or even discussed. *Hill,* therefore, represents questionable authority, at best, for resolution of this case.

The Board's other stated basis for its decision is also not persuasive in this case. The Act provides that "[t]he term 'total disability' has the meaning given it by regulations of the Secretary of Health and Human Services for claims under part B of this subchapter, and by regulations of the

Secretary of Labor for claims under part C of this subchapter." 30 U.S.C. § 902(f)(1); *see also* 20 C.F.R. §§ 410.412, 718.204, 725.-101(21). Therefore, a determination that a miner was "totally disabled" under Part B regulations may not equate to a finding of total disability under Part C regulations. The Director asserts that criteria for establishing entitlement under Part B cannot be engrafted onto Part C claims, and that this assertion is borne out by legislative history. In *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485 (6th Cir.1985), this court summarized the legislative history which detailed the separateness of Part B and Part C claims:

> Upon the enactment of the Black Lung Act of 1972, interim adjudicatory rules were issued that governed Part B disability claims, which are those filed before July 1, 1973. 20 C.F.R. § 410.490. The rules were created to liberalize the black lung eligibility requirements and to facilitate prompt processing of black lung claims by the SSA. S.Rep. No. 743, 92d Cong., 2d Sess. 3, *reprinted in* 1972 U.S. Code Cong. & Ad. News 2305, 2307. *These rules, however, were not applicable to Part C claims.* 20 C.F.R. § 410.490(b). As a result, benefits were more readily paid to Part B claimants than to Part C claimants. Hearings on H.R. 3476, H.R. 8834, H.R. 8835 & H.R. 8838 before the General Subcommittee on Labor of the House Committee on Education and Labor, 93d Cong., 1st & 2d Sess. 329, 341, 349, 399 (1973–74).

> In 1977, Congress amended the black lung legislation by passing the Black Lung Benefits Reform Act of 1977. The House version of the bill would have applied the SSA rules to both Part B and Part C claims. H.R.Rep. No. 4544, 95th Cong., 1st Sess. § 7(a) (1977). The Senate version of the bill, however, did not apply the SSA rules to Part C claims; instead the Senate bill authorized the Secretary of Labor to draft his own medical eligibility criteria to be used by the Department of Labor when adjudicating Part C claims. S.Rep. No. 209, 95th Cong., 1st Sess. (1977).

> The Conference Committee adopted the Senate version of the bill with several provisos. The Committee agreed that the Department of Labor would promulgate regulations for the determination of total disability or death due to pneumoconiosis in Part C claims. H.R.Rep. No. 864, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 237, 308, 309.

*Ramey,* 755 F.2d at 489 (emphasis added).

The Director also argues that the Board's decision in this case binds the Trust Fund and coal mine operators to findings in which they did not participate. The Director asserts that it is a violation of due process to hold the Trust Fund or a coal mine operator to a finding of liability for benefits under Part C based on a determination made by the Social Security Administration. I agree with the Director that due process concerns are implicated in upholding the Board's decision.

I do not agree with the majority's opinion that "the Director's interpretation is contrary to the plain wording" of section 725.-218(a)(2). Instead, I find that section 725.-218(a)(2) is ambiguously worded and that the Director's interpretation is a reasonable one supported by both legislative history and due process arguments. The Director's interpretation should therefore be upheld by this court. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Claimant's entitlement to benefits should be considered under Part C. Because the ALJ failed to specify the regulations under which he considered the evidence, a remand is required. *See Director, Office of Workers' Compensation Programs v. Congleton,* 743 F.2d 428, 430 (6th Cir.1984).